UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FRANCIS MOORE, ET AL.                                CIVIL ACTION

VERSUS                                               NO. 12-757-JWD-RLB

THE SHAW GROUP, INC.

## ORDER

Before the court is Plaintiff's Motion to Compel Written Discovery (R. Doc. 57) filed on July 10, 2015. Plaintiffs see an order compelling defendant The Shaw Group, Inc. to produce complete responses to its Request for Production of Documents Nos. 3, 13, 14, 17, and 27, and Interrogatory Nos. 1-4 by Plaintiff Terrance James. (R. Doc. 58). [1] The motion is opposed by Shaw Constructors, Inc. ("Shaw Constructors") (R. Doc. 62).

### I.   Procedural History and Background

This is an employment discrimination action brought by Francis Moore, Derek Davis, Phillip Hentz, Charles Holmes, Terrence James, Roy Johnson, Shawn Keith, Carlos Neal, Marcus Richardson, Byron Ricks, Beowulf Snell, and Pandra Vaughn (collectively, "Plaintiffs") asserting various claims of race discrimination, racial harassment and retaliation in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 *et seq.*; the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq.*; Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq*. Plaintiffs initiated this action on November 29, 2012 by naming The Shaw Group, Inc. as the sole defendant in the Complaint. (R. Doc. 1). On March 29, 2013,

---

[1] Plaintiffs filed a separate Memorandum in Support. (R. Doc. 58).

Plaintiffs filed an Amended Complaint naming both The Shaw Group, Inc. and Chicago Bridge & Iron Company ("CG&I") as defendants. (R. Doc. 6).

Plaintiffs seek a variety of injunctive relief and damages, including "back pay, front pay, general and special damages for lost compensation, and job benefits they would have received but for Defendants' discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish." (R. Doc. 6 at 53). Most of the Plaintiffs' claims arise out of their employment at a coal-fired power plant located in Fulton, Arkansas ("the Turk site"). The claims of Plaintiff Terrance James arise out of his employment as a pipefitter at the Goodyear Plant in Beaumont, Texas ("the Goodyear site").

On April 10, 2013, counsel for Shaw Constructors filed an unopposed motion for extension of time to file a responsive pleading, stating that Plaintiffs had incorrectly identified Shaw Constructors as "The Shaw Group, Inc." in the Complaint and Amended Complaint. (R. Doc. 9). Shaw Constructors does not identify whether "The Shaw Group, Inc." is an entity capable of being named as a defendant. Shaw Constructors is not mentioned anywhere in Plaintiffs' Complaint and Amended Complaint. On May 2, 2013, Plaintiffs and Shaw Constructors filed a stipulation of voluntary dismissal of CG&I on the basis that CG&I "is neither successor [n]or interested party in this action." (R. Doc. 13). On May 20, 2013, Shaw Constructors filed an answer in the place of The Shaw Group, Inc., again asserting that The Shaw Group, Inc. was wrongly identified as a defendant. (R. Doc. 14). On June 14, 2013, the court dismissed CG&I as a defendant. (R. Doc. 17).

To date, Plaintiff has not moved to dismiss The Shaw Group, Inc. as a defendant or sought to add Shaw Constructors as a defendant. Nevertheless, there does not appear to be a dispute that Shaw Constructors is acting, whether properly or not, as a defendant in this action in

place of The Shaw Group, Inc. While Shaw Constructors is not formally named a defendant in this action, Plaintiffs have made no objections to received responses to discovery propounded on The Shaw Group, Inc. (the only defendant remaining in this action) by Shaw Constructors (a non-party to this action). Considering the procedural posture of this action, the court will analyze the instant discovery dispute pursuant to the procedures provided for discovery between parties.[2]

On February 14, 2014, Plaintiffs served their First Combined Discovery Demands on Shaw Group, Inc. (R. Doc. 58 at 1). Shaw Constructors provided responses and objections to the discovery requests on May 16, 2014. (R. Doc. 57-3). Plaintiffs do not assert that these responses and objections were untimely or provided by the wrong entity.

Plaintiffs represent that they sent a "deficiency letter" to Shaw Constructors on August 1, 2014. (R. Doc. 58 at 2). This letter is not before the court. On April 6, 2015, Plaintiffs requested further responses to the discovey at issue. (R. Doc. 62-1). On April 20, 2015, Shaw Constructors provided additional responses. (R. Doc. 62-2). Shaw Constructors further represents that it supplemented its responses on May 5 and 8, 2015. (R. Doc. 62 at 2). These responses are not before the court. On July 9, 2015, the day before the discovery deadline, Plaintiffs made a final request for the outstanding discovery requests. (R. Doc. 57-4 at 2). Shaw Constructors provided a response to this request on the morning of July 10, 2015. (R. Doc. 57-4 at 3).

Finding Shaw Constructors' final response insufficient, on July 10, 2015, Plaintiffs filed the instant motion, arguing that Shaw failed to provide relevant information or requested

---

[2] Plaintiffs are advised to take appropriate action, if warranted, to name Shaw Constructors, Inc. as a defendant and to dismiss The Shaw Group, Inc. as a defendant.

documents related to four categories: (1) EEO-1 Reports; (2) safety and security measures; (3) prior claims of discrimination; and (4) the Goodyear site.

## II.     Law and Analysis

### A.     Legal Standards

Rule 26(b)(1) of the Federal Rule of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." To be relevant, "information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  The scope of discovery is not without limits, however, and the court may protect a party from responding to discovery when: (i) it is unreasonably cumulative or duplicative, or obtainable from some other less-burdensome source; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories.  A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).  "If the answer to an interrogatory may be determined by examining . . . a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Fed. R. Civ. P. 33(d).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

Rules 33 and 34 provide a party with 30 days after service of the discovery to respond or object. *See* Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A). If a party fails to respond fully to discovery requests made pursuant as to Rules 33 and 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**B.    Discovery Requests at Issue**

**1.    EEO-1 Reports**

Plaintiffs' Request for Production of Documents No. 3 requests "EEO-1 Reports filed on behalf of Shaw's corporate headquarters and Shaw's worksites and all documents used to prepare all EEO-1 Reports." (R. Doc. 57-3 at 5). [3] According to Plaintiffs, the request was limited from November 29, 2008 to the present. (R. Doc. 58 at 3; *see* R. Doc. 62-1 at 1). Shaw Constructors objected on the basis that the request was overly broad as it "(1) seeks information during a time frame that is not relevant to the allegations contained in Plaintiff's Complaint and (2) seeks information pertaining to entities that did not employ these Plaintiffs" (R. Doc. 57-3 at

---

[3] Plaintiffs did not provide the actual discovery requests as an attachment to its motion. Accordingly, the court cannot identify with certainty whether Plaintiff defined the term "Shaw" as used throughout the discovery requests. The May 16, 2014 cover letter to responses provided by Shaw Constructors, Inc. states that it is responding to "Plaintiffs' First Combined Discovery Requests to Defendant The Shaw Group Inc." (R. Doc. 57-3 at 1). Furthermore, Plaintiffs state in their motion that they are seeking to compel "Defendant Shaw Group Inc." to produce answers and responses to its discovery requests. (r. Doc. 57 at 1).

5). Shaw Constructors further states that the request is unduly burdensome as it seeks all documents used to prepare the EEO-1 Reports, and otherwise seeks irrelevant information. (R. Doc. 57-3 at 5).

Plaintiffs argue that all EEO-1 Reports for 2009 through 2014 are relevant because Plaintiffs contend that "the Defendants" had discriminatory hiring and termination practices, and the EEO-1 Reports prior to and after the Plaintiffs' employment terms may lead to admissible evidence regarding "the racial makeup of the workers employed by Defendants." (R. Doc. 58 at 3). Plaintiffs make no argument in support of the relevance of the underlying documents used to create those EEO-1 Reports.

Shaw Constructors represents that it has produced the EEO-1 Reports for 2011 and 2012. (R. Doc. 62 at 2). Shaw Constructors argues that the request for EEO-1 Reports for 2008 and 2013 is overly broad in scope because Plaintiffs were only employed at the Turk site from 2009 through 2012. (R. Doc. 62 at 2). While it has agreed to produce the EEO-1 Reports for 2009 and 2010, Shaw Constructors represents that it has been unable to locate those reports. (R. Doc. 62 at 2-3). Shaw Constructors states that because The Shaw Group, Inc. was acquired by CB&I in February 2013, certain personal changes have made it difficult for CB&I (and therefore Shaw Constructors) to locate reports that pre-date the acquisition. (R. Doc. 62 at 2-3). Finally, Shaw Constructors argues that Plaintiffs' request for "all documents used to prepare all EEO-1 Reports is overly broad because it relates to information regarding 842 employees at the Turk site between 2009 and 2013, and otherwise seeks information duplicative of what is actually found within the EEO-1 Reports." (R. Doc. 62 at 3).

The court will limit Plaintiffs' Request for Production No. 3 to actual EEO-1 Reports for the years 2008 through 2014. The court finds that the 2008 and 2014 reports are relevant with

regard to determining the racial makeup of Shaw's employees before and after the Plaintiffs were hired and fired. *See Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 541 (5th Cir. 1980) ("Consideration of hiring practices, both before and after the applicable statutory period, is a necessary predicate to meaningful findings regarding employment practice."). The court agrees with Shaw Constructors, however, that the request for "all documents used to prepare all EEO-1 Reports" is overly broad. Accordingly, the court will only require production of the actual reports and not the underlying documents used to generate those reports.

Shaw Constructors identified itself as a proper defendant as early as April 10, 2013, and has been aware for over two years that it would likely have to produce relevant EEO-1 Reports in discovery. Shaw Constructors must endeavor to locate, and produce, the EEO-1 Reports for 2008, 2011, 2012, and 2013 within 7 days of the date of this Order. If Shaw Constructors cannot produce the EEO-1 Reports for 2008, 2011, 2012, and 2013 on the basis that it is unable to locate those documents, then Shaw Constructors must inform Plaintiff of the searches conducted to locate the documents.

### 2. Safety and Security Measures

Plaintiffs' Requests for Production of Documents No. 13 and No. 17 respectively seek "any documents relating to security measures taken after the Fulton, Arkansas Turk Project received bomb threats" and "any and all documents relating to the bomb threats that occurred at the Fulton, Arkansas Turk Project site." (R. Doc. 57-3 at 11, 13). Shaw Constructors objected to these requests as irrelevant and overly broad, as the requests seek 'information during a time frame that is not relevant to the allegations contained in Plaintiff's Complaint." (R. Doc. 57-3 at 11, 13). On July 10, 2015, Shaw Constructors informed Plaintiffs that no responsive documents had been located, but that another search for the documents was being conducted and it would

6

"produce documents relating to the security measures taken at the Turk site relating to the bomb measures" that were located. (R. Doc. 57-4 at 1).

Plaintiff argues that these requests seek relevant information because Plaintiffs alleged that the "Defendants took significant measures to monitor and inspect the restrooms used at the plant after a bomb threat was made," and information related to this decision has bearing on the alleged non-response of "the Defendants" regarding racial graffiti in the restrooms at the worksite. (R. Doc. 58 at 4). In other words, Plaintiffs argue that the "information is crucial to Plaintiff's allegations that the Defendants failed to investigate or address complaints of discriminatory and racist graffiti." (R. Doc. 58 at 4).[4]

In opposition, Shaw Constructors argues that Plaintiffs are "comparing apples to oranges" as the "measures taken by [Shaw Constructors] in response to bomb threats that may have threatened the lives of hundreds of employees and posed a threat to the safety of the surrounding Arkansas residents have no bearing on how [Shaw Constructors] responded to complaints of racial harassment or race discrimination." (R. Doc. 62 at 4). Shaw Constructors further represents that each of its witnesses deposed "has testified about the existence of the bomb threats and the procedure that was used to respond to the bomb threats." (R. Doc. 62 at 4). Despite their objection as to relevance, Shaw Constructors represents that it has made good faith efforts to locate any written documents relating to the bomb threats but no such documents have been located. (R. Doc. 62 at 4). Shaw Constructors argues that it would be unduly burdensome

---

[4] In their Amended Complaint, Plaintiffs allege that in September of 2011, there were bomb threats at the Fulton site and The Shaw Group Inc. took immediate action by bringing in holding "big meetings about the bomb threats," adding more security and monitoring of the bathrooms, and offering awards for information regarding those responsible for the threats. (*See* Amended Complaint, ¶¶ 32, 110, 124, 134, 138). In contrast, Plaintiffs allege that The Shaw Group Inc. took no commensurate action in response to addressing racial graffiti and nooses in the bathrooms and other locations at the Fulton site. (*See* Amended Complaint, ¶¶ 32, 110, 124, 134, 138).

7

to require it to retrieve documents from offsite storage facilities to locate such information in light of the limited probative value of the documents. (R. Doc. 62 at 5).

While the information sought may shed light on Plaintiffs' factual assertions regarding responses to the bomb threats, the requests are not reasonably calculated to lead to admissible evidence regarding Plaintiff's claims or Shaw Constructors' defenses. To the extent the documents requested might lead to admissible evidence, the relevance of such documents is so speculative that it would be unduly burdensome to require Shaw Constructors to look any further for responses to those requests. Shaw Constructors represents that it has made reasonable efforts to find such documents despite its objection as to relevance, and the court finds that representation is sufficient.

### 3. Prior Claims of Discrimination

Plaintiffs' Request for Production of Documents No. 14 requests "all documents relating to other Charges of Discrimination filed against Shaw with the Equal Employment Opportunity Commission or any other administrative agency or court on behalf of any non-Plaintiff employee of Shaw." (R. Doc. 57-3 at 11). Shaw Constructors objected on the basis that the request was overly broad as it "(1) seeks information during a time frame that is not relevant to the allegations contained in Plaintiff's Complaint and (2) seeks information pertaining to entities that did not employ these Plaintiffs." (R. Doc. 57-3 at 11-12). Shaw Constructors also objected on the basis that the request seeks irrelevant information pertaining to individuals who are not parties to this litigation. (R. Doc. 57-3 at 11-12).

After discussions with Shaw Constructors, Plaintiffs narrowed the request on April 7, 2015, to the following scope: "Please provide responsive documents limited to any and all locations where Plaintiffs worked for Defendant and any location where any co-worker,

8

supervisor or manager of Defendant who has been identified by any Plaintiff as an individual who has engaged in any act of discrimination and/or harassment has worked for Defendant." (R. Doc. 62-1 at 2) (emphasis added). Shaw Constructors responded by stating that while it "maintains that complaints of discrimination made by other individuals who are not parties to this lawsuit are not relevant to the claims asserted by [Plaintiffs], [Shaw Constructors] [is] in the process of searching [its] records to determine whether there have been any other complaints of race discrimination or racial harassment lodged against any of Plaintiff's supervisors while employed at the Turk site," and that any information located would be provided. (R. Doc. 62-2 at 2 (emphasis added)).

Plaintiffs represent that as of the date of their motion they have not been provided any responsive documents. (R. Doc. 58 at 5). Plaintiffs further represent that they have, through their own efforts, identified and located an individual who has filed his own complaint for similarly discriminatory conduct (R. Doc. 58 at 5). Plaintiffs do not identify the individual or any other information regarding his alleged complaint.

In opposition, Shaw Constructors represents that it has produced all responsive documents involving the same supervisors as the Plaintiffs. (R. Doc. 62 at 5). Furthermore, Shaw Constructors notes that Plaintiffs have not identified the alleged individual who filed a responsive complaint and, therefore, Shaw cannot verify whether the individual filed a complaint or shared a supervisor of any of the Plaintiffs. (R. Doc. 62 at 5).

The court cannot require Shaw Constructors to produce documents that are not in its custody, possession, or control. Shaw Constructors represents that it has produced all responsive documents involving the same supervisors as the Plaintiffs. It is unclear, however, whether Shaw Constructors has produced all responsive documents involving the same co-workers or

9

managers of Plaintiffs who Plaintiffs have accused of engaging in discrimination and/or harassment. The court finds the requests for these documents to be reasonably tailored to lead to the discovery of admissible evidence. Accordingly, Shaw Constructors must provide a supplemental response regarding any charges in its custody, possession, or control filed by non-Plaintiffs that relate to co-workers or managers of the Plaintiffs. If no such documents are in its custody, possession, or control, then Shaw may state so in a supplemental response.

### 4. Goodyear Documents

Plaintiffs' Request for Production of Documents No. 27 seeks "the personnel file including but not limited to documents relating to the hire, transfer, layoff, termination, and/or disciplinary action for all employees hired in June 2011 into pipefitter positions at the Goodyear plant in Beaumont, Texas." (R. Doc. 57-3 at 18). Shaw Constructors objected to this request on the basis that it is overly broad and seeks irrelevant information. (R. Doc. 57-3 at 18). Shaw Constructors further objected to the request "to the extent it seeks information pertaining to a worksite over which [Shaw Constructors] had no control" and offered that Shaw Constructors "did not employ any individuals who worked at the Goodyear plant in Beaumont, Texas and, therefore, it has no documents responsive to this request." (R. Doc. 57-3 at 18).[5]

Plaintiff Terrance James' Interrogatory Nos. 1-4 respectively seek information related to (1) persons subject to reductions in force at the Goodyear Plant; (2) persons rehired or transferred to another "Shaw" worksite after the reduction in force; (3) persons hired at the Goodyear Plant in September of 2011; and (4) why Terrance James was refused to be allowed to return to work for "Shaw" at the Goodyear plant. (R. Doc. 57-3 at 28-29). Shaw Constructors

---

[5] In its response, Shaw Constructors did not identify the actual entity that had control over the worksite, and whether The Shaw Group, Inc. had any control over the worksite.

10

objected to the interrogatories on the basis of relevance and stated that it "did not employ any individuals that worked at the Goodyear plant in Beaumont, Texas." (R. Doc. 57-3 at 28-29).

On April 7, 2014, Plaintiff clarified their Request for Production No. 27, and Plaintiff Terrance James' Interrogatory Nos. 1-4, sought information regarding workers hired as contract workers at the Goodyear Plant, and not necessarily as employees of "Shaw." (R. Doc. 62-1 at 2-3). On April 20, 2014, Shaw Constructors responded that it "did not employ, nor contract with, any individual to perform work at the Goodyear plan in Beaumont, Texas" and, therefore, "has no documents responsive to this request." (R. Doc. 62-2 at 2). On July 10, 2015, Shaw Constructors identified the employer of Terrance Jones as "Shaw Maintenance, Inc., an entity which is not named as a defendant in this lawsuit." (R. Doc. 57-4 at 1).[6]

Other than summarizing the foregoing exchange in much less detail, Plaintiffs argue that Shaw Constructors should be required to provide complete responses and answers because "there remains questions of fact regarding employees of Defendants placed to work at the Goodyear Plant, which have not been resolved" and these "requests should be responded to, particularly in light of the relevant depositions taken regarding the Goodyear contract." (R. Doc. 58 at 6).

In opposition, Shaw Constructors again asserts that Plaintiff Terrance James has never worked for Shaw Constructors and that Plaintiff Terrance James worked for Shaw Maintenance, Inc. (R. Doc. 62 at 6). Shaw Constructors further states that it "has no documents responsive to these requests and is not obligated to provide documents responsive to this request [sic]." (R. Doc. 62 at 6).

As noted earlier, Shaw Constructors inserted itself into this litigation as the "correct" defendant in place of "The Shaw Group, Inc." On May 20, 2013, Shaw Constructors admitted

---

[6] Shaw Constructors did not identify whether Shaw Maintenance, Inc. is a subsidiary of, or otherwise related to, The Shaw Group, Inc. Plaintiffs have not sought to add Shaw Maintenance, Inc. as a defendant in this litigation.

11

in its Answer to Plaintiffs' Complaint and Amended Complaint that Terrance James "previously worked for [Shaw Constructors] in Beaumont, Texas" and that Terrance James "was hired to work for [Shaw Constructors] at the Goodyear Plant located in Beaumont, Texas on or about June 7, 2011." (R. Doc. 14, at ¶¶ 18, 95). On July 17, 2014, over one year later and only after providing its discovery responses, Shaw Constructors amended its Answer to deny that Terrance James was ever hired by, or worked for, Shaw Constructors. (R. Doc. 46, at ¶¶ 18, 95).

Based on the information before it, the court is not satisfied regarding the sufficiency of Shaw Constructor's objection and argument. It is clear, based on its amended Answer, that Shaw Constructors has some information within its custody and control regarding the relationship between these various Shaw entities as well as information regarding the employment of Terrance James. Shaw Constructors is directed to provide more detailed answers regarding the discovery requests related to Plaintiff Terrance James and the Beaumont Plant. Shaw Constructors must supplement its response to Request for Production No. 27 by identifying, to the extent it has possession, custody, or control of the requisite information, the business relationship between Shaw Maintenance, Inc. and The Shaw Group, Inc. Shaw Constructors must further supplement its response by identifying, to the extent it has possession, custody, or control of the requisite information, the entities who have possession, custody, or control of the documents sought by Request for Production of Documents No. 27.

The court overrules Shaw Constructors' objections to Plaintiff Terrance James' Interrogatory Nos. 1-4 on the basis of relevance. To the extent the information sought through these interrogatories is in its possession, custody, or control of Shaw Constructors, it must provide a supplemental response answering the interrogatories without further objection. If

Shaw Constructors is not in possession, custody, or control of information that will allow it to answer the interrogatories, it must say so in a supplemental response.

**III.     Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED in part and DENIED in part.**  Shaw Constructors must provide supplemental responses to Request for Production Nos. 3, 14, and 27, and Plaintiff Terrance James' Interrogatory Nos. 1-4, within ten days of the date of this Order and in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that, in accordance with Rule 37(a)(5)(C), Plaintiffs and Shaw Constructors shall bear their own costs.

Signed in Baton Rouge, Louisiana, on August 18, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**