UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

FRANCIS MOORE, DEREK
DAVIS, PHILLIP HENTZ,
CHARLES HOLMES,
TERRENCE JAMES, ROY                      CIVIL ACTION NO: 3:12-CV-757(JWD)(RLB)
JOHNSON, SHAWN KEITH,
CARLOS NEAL, MARCUS
RICHARDSON, BYRON RICKS,
BEOWULF SNELL, and PANDRA                JUDGE deGRAVELLES
VAUGHN

      *Plaintiffs*,                     MAGISTRATE JUDGE BOURGEOIS

v.

THE SHAW GROUP, INC.

      *Defendant*.

DEFENDANT'S MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT
AS TO THE CLAIMS OF PLAINTIFF TERENCE JAMES

      **NOW INTO COURT**, through undersigned counsel, comes Shaw Constructors, Inc.

("Defendant" or "Shaw Constructors"), incorrectly identified as The Shaw Group, Inc., and

respectfully submits this Memorandum in Support of its Motion For Summary Judgment As To

The Claims Of Plaintiff Terence James.[1]

INTRODUCTION

      There are twelve Plaintiffs in this lawsuit alleging various forms of race discrimination.

Unlike all of the other Plaintiffs in this lawsuit, however, Plaintiff Terence James ("James") was

never employed by Defendant, nor did James ever work at the AEP Turk site in Fulton,

Arkansas, the location central to the allegations in this lawsuit.  In fact, James was employed

---

[1] Mr. James's first name is incorrectly spelled as "Terrence" throughout the lawsuit.  *See* First Amended Complaint, Doc. No. 6.  The correct spelling is "Terence."  Deposition of Terence James, p. 9.  This document uses the correct spelling.

solely by Shaw Maintenance, Inc., a separate and distinct legal entity who is not a party to this lawsuit, and there is absolutely no evidence suggesting that James ever worked for Defendant in Fulton, Arkansas. Because James cannot prove an essential element to his race-based discrimination claims, namely that he was employed by Defendant Shaw Constructors, Inc., summary judgment should be granted and all of James's claims should be dismissed with prejudice.

## PROCEDURAL HISTORY

On November 29, 2012, Plaintiffs Frances Moore, Derek Davis, Shawn Keith, Carlos Neal, Marcus Richardson, Byron Ricks, Beowulf Snell, and Pandra Vaughn filed the instant lawsuit against Shaw Constructors asserting claims of race discrimination, racial harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII") and 42 U.S.C. §1981 ("§1981").[2] On March 29, 2013, Plaintiffs filed a First Amended Complaint whereby Plaintiffs Phillip Hentz, Charles Holmes, Roy Johnson, and Terence James joined the lawsuit.[3] Additionally, Plaintiffs named Chicago Bridge & Iron Company ("CB&I") as a defendant. Subsequently, however, on May 2, 2013, the parties voluntarily dismissed CB&I from the lawsuit.[4] Thus, the only defendant in this action is Shaw Constructors.

## STATEMENT OF MATERIAL FACTS

Defendant adopts and incorporates the Statement of Material Facts which has been filed separately in accordance with Uniform Local Rule 56(a).

---

[2] Original Complaint, Doc. No. 1.
[3] First Amended Complaint, Doc. No. 6.
[4] Stipulation Of Voluntary Dismissal, Doc. No. 13.

## LEGAL ARGUMENT

**I.   SUMMARY JUDGMENT STANDARD.**

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence.  *Id*. at 322–23.  Once the movant carries its initial burden, it is incumbent upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986).  Such a showing requires the non-moving party to come forward with "specific facts" showing there is a genuine issue for trial.  *Id*. at 587.  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" on summary judgment.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

An application of the foregoing standard to the undisputed facts of this case mandates an entry of summary judgment in favor of Defendant.

3

## II.     JAMES'S CLAIMS UNDER TITLE VII FAIL AS A MATTER OF LAW.

In the First Amended Complaint, James alleges that Shaw Constructors violated Title VII through various forms of discrimination and harassment based on his race.  James also asserts a claim that Defendant's policies and procedures had a disparate impact on African Americans.[5] However, summary judgment should be granted as to all of James's claims arising under Title VII for two reasons.  First, James cannot show that an employment relationship existed between Shaw Constructors and James, an essential element to his Title VII claims.   Second, James cannot show that he exhausted his administrative remedies, another essential element to his Title VII claims.

### 1.  No Employment Relationship Existed Between Shaw Constructors And James.

Under Title VII, it is "an unlawful employment practice for an *employer* . . . (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race []; or (2) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race []."  42 U.S.C.A. § 2000e-2(a).

In the Fifth Circuit, "[d]etermining whether a defendant is an 'employer' under Title VII [] involves a two-step process."  *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 118, n.2 (5th Cir. 1993) (citing *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990)), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991).  "First, the defendant must fall within the statutory definition."  *Id*.  "Second, ***there must be an employment relationship between the plaintiff and the defendant***."  *Id*.

---

[5] First Amended Complaint, Doc. No. 6, ¶¶ 193-198, 200, 213, 214.

It is undisputed that Shaw Constructors satisfies the first step of the two-step inquiry, that is, it meets the definition of "employer" as defined by 42 U.S.C. § 2000e(b).  Indeed, Title VII defines an "employer" to include a "person who is engaged in an industry affecting commerce who has fifteen or more employees … and any agent of such a person." 42 U.S.C. § 2000e(b).[6] There is no dispute that Shaw Constructors meets this definition.

However, Plaintiff's claims against Shaw Constructors fails on the second point.  That is, *there is no employment relationship between James and Shaw Constructors.*[7]  To determine whether an employment relationship exists within the meaning of Title VII, the Fifth Circuit applies a "hybrid economic realities / common law control test" (the "hybrid test").  *Deal*, 5 F.3d at 118-119.  Under this test, "[t]he right to control an employee's conduct is the most important component," and when examining this component, the focus has been "on whether the alleged employer has <u>the right to hire and fire the employee</u>, <u>the right to supervise the employee</u>, and <u>the right to set the employee's work schedule</u>."  *Deal*, 5 F.3d at 119 (citing *Fields v*, 906 F.2d at 1019-20 and *Mares v. Marsh*, 777 F.2d 1066, 1068 (5th Cir. 1985)) (emphasis added).  Under the economic realities component of the test, the focus has been "on whether the alleged employer <u>paid the employee's salary</u>, <u>withheld taxes</u>, <u>provided benefits</u>, and <u>set the terms and conditions of employment</u>."  *Id.*, citing, *Mares*, 777 F.2d at 1068 (emphasis added).  *See also Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007), *citing, Deal*, 5 F.3d at 118-119.

In the instant matter, the evidence, or rather *lack thereof*, clearly demonstrates that no employment relationship existed between Shaw Constructors and James.  As an initial matter,

---

[6] The text ties the definition of an "employer" to the meaning of "employee," which Title VII defines as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

[7] Declaration of Thomas Roosa, ¶20.  The Declaration of Thomas Roosa is attached to Defendant's Motion for Summary Judgment as Exhibit 3 and cited herein as "Roosa Dec., ¶___."

there simply is no evidence that James was ever employed by Shaw Constructors.  Indeed, Defendant specifically denies that James was ever employed by Defendant.[8]  Moreover, Defendant has no record of ever employing James.[9]  James was employed solely by Shaw Maintenance, Inc. ("Shaw Maintenance"), a separate and distinct legal entity from Defendant.[10] In fact, James testified that he was employed by Shaw Maintenance, not Defendant.[11]

With respect to the control component of the hybrid test, not only is there no evidence that Defendant ever employed James, but there is absolutely no evidence suggesting that Defendant had any control over James while he was employed by Shaw Maintenance.[12]  Shaw Maintenance and Defendant are separate and distinct legal entities with separate lines of business.[13]  Defendant would not have had the right to hire, fire, or supervise James as a Shaw Maintenance employee, nor would Defendant have had the right to set his work schedule.[14]  For these reasons, James does not satisfy the control component of the hybrid test.

Likewise, James cannot point to any evidence to satisfy the economic component of the hybrid test.  As noted above, James was an employee of Shaw Maintenance, not Defendant.

---

[8] First Amended Answer And Affirmative Defenses, Doc. No. 46, ¶¶ 6 ["Defendant admits that Plaintiffs, other than Terrence James, are formerly hourly employees but denies the remaining allegations contained in Paragraph 6 of Plaintiffs' Amended Complaint"], 18, 95-104, 193-198, 200, 203-208, 210 213-218.

[9] Roosa Dec, ¶20, Ex. R.

[10] Roosa Dec.,¶21.

[11] Deposition of Terence James, pp. 32-33, Exh.  4, wherein James testified:

Q. And if you look down on Exhibit No. 4 [the separation notice for his first stint of employment], where it says "Employer Name," it says, "Shaw Maintenance."  Is that consistent with what you understood about who your employer was?

A. Yes.  The same one I worked out at Goodyear.

Excerpts from the Deposition of Terence James are attached to Defendant's Motion for Summary Judgment as Exhibit 1 and cited herein as "James, p. ___."     *See also* James, Exh. 4 [separation notice identifying "Shaw Maintenance" as the employer without any reference to Defendant], Exh. 6 [separation notice requesting employee give the Texas Workforce Commission the contact information for "Shaw Maintenance, Inc." without any reference to Defendant].

[12] Roosa Dec. ¶22.

[13] Roosa Dec., ¶21.

[14] Roosa Dec., ¶22.

Moreover, Defendant would not have set the terms and conditions of James's employment with Shaw Maintenance.[15]  For these reasons, James does not satisfy the economic component of the hybrid test.

Because James cannot satisfy either component of the hybrid test, James cannot prove that an employment relationship existed between James and Defendant for purposes of Title VII, an essential element to his Title VII claims.  Therefore, summary judgment must be entered in favor of Defendant as to all of James's claims arising under Title VII.  *See Gibson v. Applebee's Neighborhood Grill*, No. 3: 07-0719, 2007 WL 3119377, at *2-4 (W.D. La. 2007) (finding no employment relationship existed between franchisor and plaintiff, an employee of a franchisee, where the evidence showed that the franchisor had no involvement, directly or indirectly, in running the franchisee restaurant, or employing individuals who worked at the franchisee restaurant, or exercised any control over franchisee's hiring, firing, supervision, or work schedule, and there was no evidence that the franchisor paid the plaintiff's salary, withheld taxes, provided benefits, or set the terms and conditions of employment); *Mares*, 777 F.2d at 1068-69 (court found that no employment relationship existed between the Army and plaintiff, a grocery bagger at a commissary, because the Army had no role in the hiring, firing or supervision of the group in which plaintiff was a member, and because the Army did not pay the plaintiff wages or provide any other employment benefit); *Deal*, 5 F.3d at 118-119 (finding no employment relationship existed between State Farm and the plaintiff, an employee of an independent insurance agent of State Farm, because the insurance agent was solely responsible for hiring, supervising, and firing the plaintiff and setting her work schedule, and because insurance agent paid her salary, withheld taxes from her paycheck, provided benefits, and established the terms and conditions of her employment).  *See also Tedesco v. Wal-Mart Stores, Inc.*, No. 1:07-CV-

---

[15] Roosa, Dec. ¶22.

00819, 2010 WL 883808, at *2-3 (W.D. La. 2010) (without applying the hybrid test, the court found that no employment relationship existed between a parent company (Wal-Mart) and the plaintiff, an employee of a subsidiary company (Sam's), because the plaintiff repeatedly referred to himself in deposition testimony as an employee of Sam's, the employee acknowledged that the companies were two different operations, and there was no evidence to the contrary).

**2. James's Claims Under Title VII Fail As A Matter Of Law Because James Failed To Exhaust His Administrative Remedies.**

Even if this Court were to take a leap of faith and find that somehow Shaw Constructors had an employment relationship with James, his Title VII claims fail nonetheless as he has failed to exhaust his administrative remedies.

In the Fifth Circuit, "[e]mployment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006) ("This Circuit has long required plaintiffs exhaust their administrative remedies before bringing suit under Title VII") (citing *Wheeler v. American Home Products, Corp.*, 582 F.2d 891, 897 (5th Cir. 1977)).  "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor*, 296 F.3d at 379.  Because Louisiana and Texas are deferral states, a plaintiff's charge of discrimination must be filed within 300 days of the alleged discriminatory act.  *See* 42 U.S.C.A. § 2000e-5(e)(1); *Cargo v. Kansas City S.*, No. 05-2010, 2009 WL 3017917, at *1 (W.D. La. Sept. 16, 2009); *E.E.O.C. v. Houston Area Sheet Metal Joint Apprenticeship Comm.*, No. H-00-3390, 2002 WL 1263893, at *3 (S.D. Tex. May 31, 2002).  A charge is deemed filed with the EEOC "upon receipt of the document." 29 C.F.R. § 1601.13(a)(4)(ii)(A).

    a. *James Failed To Exhaust Administrative Remedies For All Of His Title VII Claims Because He Did Not Timely File An EEOC Charge.*

James failed to exhaust his administrative remedies.  The last adverse employment action alleged by James occurred in November 2012.[16]  James, however, testified on May 22, 2015 that he has never filed a discrimination complaint with the EEOC regarding his employment at Shaw Maintenance or any other employer.[17]  Because he is clearly outside the 300-day period for filing an EEOC charge, James has failed to exhaust his administrative remedies and summary judgment must be entered in favor of Defendant as to all of James's Title VII claims.  *See Cargo*, 2009 WL 3017917, at *1.

    b. *James Failed To Exhaust Administrative Remedies For All Of His Title VII Claims Because He Did Not Timely File An EEOC Charge And James Is Unable To Take Advantage Of The Single Filing Rule To Rectify This Deficiency.*

James will argue that his lawsuit should be allowed to proceed on his Title VII claims under the "single filing rule."[18]  Under this rule, "an individual who has not filed an administrative charge can opt-in to a suit filed by any similarly situated plaintiff under certain conditions."  *Anson v. Univ. of Texas Health Sci. Ctr. at Houston*, 962 F.2d 539, 541 (5th Cir. 1992).  The Fifth Circuit has made clear, however, that the single filing rule is a "carefully limited exception."  *Bettcher v. Brown Sch., Inc.*, 262 F.3d 492, 493 (5th Cir. 2001); *Price*, 459 F.3d at 598 (citations omitted).  In *Bettcher v. Brown Sch., Inc.*, the Fifth Circuit identified three conditions that a plaintiff must satisfy to invoke the single filing rule:

---

[16] James was employed by Shaw Maintenance, not Defendant, from about August 11, 2010 to August 28, 2010, and from about June 7, 2011 to October 31, 2011.  James, pp. 17, 26-32, 51-52, 76-77, Exhs. 2, 4, 5, 6.  James alleges in the First Amended Complaint that the last time he called Defendant seeking to be re-hired was in and around November 2012.  First Amended Complaint, Doc. 6, ¶ 104.
[17] James, pp. 94-95.
[18] First Amended Complaint, ¶26.

> First, <u>the plaintiff must be similarly situated to the person who actually filed the EEOC charge</u>. Second, <u>the charge must have provided some notice of the collective or class-wide nature of the charge</u>. Finally, a prerequisite-implicit to be sure-for piggybacking under the single filing rule is the requirement that the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join.

*Bettcher*, 262 F.3d at 494 (citations and internal quotes omitted) (emphasis added).  *See also Price*, 459 F.3d at 599.

Additionally, irrespective of whether a plaintiff can satisfy the *Bettcher* conditions, a plaintiff attempting to "piggyback" onto a co-plaintiff's charge under the single filing rule must show that <u>the charge was filed within the 300-day time period applicable to the plaintiff's claim</u>. *See Cargo v. Kansas City S.*, No. 05-2010, 2009 WL 3012610, at *2 (W.D. La. Sept. 16, 2009) (finding that plaintiffs could not piggyback their Title VII and ADEA claims onto the charges of co-plaintiffs that were filed over 300 days *after* the plaintiffs' claims arose), *citing*, *Lumpkin v. Coca-Cola Bottling, Co. United, Inc.*, 216 F.R.D. 380, 385 (S.D. Miss. 2003); *Cargo v. Kansas City S.*, No. 05-2010, 2009 WL 3012592, at *2 (W.D. La. Sept. 16, 2009) (court would not consider EEOC charges filed *before* the plaintiff's Title VII claim arose).

> i. <u>James Failed To Exhaust Administrative Remedies For All Claims Arising From Alleged Conduct During His Employment In 2010 Because All EEOC Charges Onto Which James May Seek To Piggyback Were Filed Outside Of The 300-Day Period Applicable To His Claims.</u>

In the instant case, James is unable to "piggyback" onto any of the EEOC charges filed by the other Plaintiffs in this lawsuit (collectively referred to as the "EEOC charges" or "charges") concerning any of James's Title VII claims arising out of his employment by Shaw Maintenance in 2010 since all of the EEOC charges were filed over 300 days *after* his first stint

of employment with Shaw Maintenance ended on August 28, 2010.[19]   The 300th day after

August 28, 2010 is June 24, 2011.  There is no EEOC charge that is filed before this date.[20]   The

earliest charge was filed on July 18, 2011.[21]   Thus, James cannot take advantage of the single

filing rule for any of his claims arising in 2010.  Therefore, summary judgment should be entered

in favor of Defendant as to all of James's Title VII claims arising in 2010 for failure to exhaust

his administrative remedies.

<blockquote>

ii.     James Failed To Exhaust Administrative Remedies For All Of His Title VII Claims Because He Is Unable To Satisfy the *Bettcher* Conditions.

</blockquote>

As an initial matter, James should be prohibited from piggybacking onto the EEOC

charges to the extent the charges were filed outside of the applicable 300-day period for any of

his Title VII claims, including those arising out of his employment with Shaw Maintenance in

2010 as described in Section II.2.b.i., *supra*, and those arising out of his employment with Shaw

Maintenance in 2011.  With respect to his employment in 2011, James should be prohibited from

piggybacking onto the EEOC charges filed by Plaintiffs Phillip Hentz and Charles Holmes

---

[19] The charges are cited in chronological order by date signed and set forth in bullet-point format for ease of reference:

- Frances Moore Deposition, Exh. 13 [initial charge signed on 7/18/11], Exh. 15 [amended charge signed on 8/17/11];
- Shawn Keith Deposition, Exh. 18 [initial charge signed on 9/2/11], Exh. 23 [amended charge signed on 12/15/11];
- Marcus Richardson Deposition, Exh. 8 [charge signed on 12/12/11];
- Pandra Vaughn Deposition, Exh. 10 [charge signed on 12/22/11];
- Roy Johnson Deposition, Exh. 12 [intake questionnaire signed on 12/23/11];
- Derek Davis Deposition, Exh. 23 [charge signed on 1/11/12];
- Carlos Neal Deposition, Exh. 9 [charge signed on 1/18/12];
- Byron Ricks Deposition, Exh. 12 [charge signed on 2/15/12];
- Beowulf Snell Deposition, Exh. 11 [charge signed on 3/12/12];
- Phillip Hentz Deposition, Exh. 8 [charge signed on 1/3/13];
- Charles Holmes Deposition, Exh. 9 [charge signed on 3/20/13].

Excerpts from the foregoing depositions are attached to Defendant's Motion for Summary Judgment as Exhibit 4 through 14 and cited herein as "[LAST NAME], p. ___."
[20] *Id.*
[21] Moore, Exh. 13 [initial charge signed on 7/18/11], Exh. 15 [amended charge signed on 8/17/11].

because those charges were filed over 300 days *after* James's employment ended on October 31, 2011.[22]  The 300th day after October 31, 2011 is September 26, 2012.  The Hentz and Holmes charges were filed in 2013, which is clearly outside the 300-day period.[23]   Additionally, the charges for Plaintiffs Shawn Keith and Frances Moore were filed *during* James's employment in 2011 and should not be considered to the extent James's claims arose *before* these charges were filed.[24]   Based on the foregoing, James should be prohibited from considering these charges to take advantage of the single filing rule.

However, no matter which EEOC charge or period of employment the Court considers for the single filing rule, James cannot satisfy the first two *Bettcher* conditions.   The first *Bettcher* condition requires James to show that he is "similarly situated to the person who actually filed the EEOC charge."   *Bettcher*, 262 F.3d at 494.  James, however, is simply unable to point to evidence showing that he is similarly situated to the other plaintiffs in this lawsuit. Indeed, the record evidence clearly demonstrates that he is not similarly situated to the other plaintiffs.

James never worked for Defendant, nor is there any information to suggest that he worked at the AEP Turk site in Fulton, Arkansas, the location central to the allegations in this lawsuit.[25]   Moreover, James testified that he worked for Shaw Maintenance, not Shaw Constructors, at locations in Westlake, Louisiana and Beaumont, Texas.[26]   Further, James testified that he knows nothing about the claims of the other Plaintiffs, that he could not be a

---

[22] James worked for Shaw Maintenance from about June 7, 2011 to October 31, 2011.  James, pp. 17, 51-52, 76-77, ExhS. 5, 6.

[23] Hentz, Exh. 8 [charge signed on 1/3/13 and received by EEOC on 1/8/13]; Holmes, Exh. 9 [charge signed on 3/20/13 and no indication received by EEOC].

[24] Moore, Exh. 13 [initial charge signed on 7/18/11 and no indication on date received by EEOC], Exh. 15 [amended charge signed on 8/17/11 and received by EEOC on 8/17/11]; Keith, Exh. 18 [initial charge signed on 9/2/11 and received by EEOC on 9/2/11], Exh. 23 [amended charge signed on 12/15/11 and no indication on date received by EEOC].

[25] Roosa Dec., ¶20, Exh. R.

[26] James, pp. 17, 26-33, 51-52, 76-77, Exhs. 2, 4, 5, 6.

witness for the other Plaintiffs in connection with their claims, and that he could not even recall the names of the other Plaintiffs.[27]  For these reasons, James is not similarly situated to the other Plaintiffs.

James also fails to satisfy the second *Bettcher* condition, which requires him to show that the charge(s) onto which he seeks to piggyback "provided some notice of the collective or class-wide nature of the charge." *Bettcher*, 262 F.3d at 494.  Critically, although the charge "need not specify that the claimant purports to represent a class or others similarly situated, **there must be some indication that the grievance affects a group of individuals *defined broadly enough to include those who seek to piggyback on the claim*.**" *Anson*, 962 F.2d at 542 (citation omitted). "Such a claim alerts the EEOC that more is alleged than an isolated act of discrimination and affords sufficient notice to the employer to explore conciliation with the affected group." *Id.*

In the instant case, <u>none</u> of the EEOC charges are defined broadly enough to give notice that the claims asserted therein would encompass the claims asserted by James.  Indeed, all of the EEOC charges are addressed to an employer in Fulton, Arkansas, the location of the AEP Turk site.[28]  All charges contain allegations that relate, at least in part, to conduct occurring at the AEP Turk site.  None of the EEOC charges refer to Shaw Maintenance as the employer, or so much as mention the sites where James worked for Shaw Maintenance.

Moreover, James testified that he reported to C. P. Abshire and Elton Kennerson, and was subject to alleged disparate treatment by a man with the last name of "Sullivan."[29]  None of the EEOC charges reference the names of these individuals.  The only charges that allege conduct perpetrated by specific individuals are the charges for Plaintiffs Charles Holmes and Roy

---

[27] James, pp. 102-103.
[28] Moore, Exhs. 13, 15; Keith , Exhs. 18, 23; Richardson, Exh. 8; Vaughn, Exh. 10; Johnson, Exh. 12; Davis, Exh. 23; Neal, Exh. 9; Ricks, Exh. 12; Snell, Exh. 11; Hentz, Exh. 8; Holmes, Exh. 9.
[29] James, pp. 54, 62-64.

Johnson.  The individuals identified by Plaintiff Holmes are Foreman Jamie Sanchez and Leadman Stephen Flores, and the individuals identified by Plaintiff Johnson are Sylvester Gutierrez and Jack Lo.[30]  There is no evidence to suggest that James had any interaction with these individuals.

Given that the EEOC charges were addressed to an employer where James did not work, concerned activity at a site where James did not work, made no mention of James's employer, supervisors, or alleged perpetrators, and further given the lack of evidence that James had any interaction with the supervisors and individuals identified in the charges, it would defy logic to conclude that the charges were defined broadly enough to give notice to Defendant, or Shaw Maintenance for that matter, that the claims asserted therein encompassed the claims asserted by James.  Thus, James is unable to satisfy the second *Bettcher* requirement.

Because James is unable to satisfy the *Bettcher* requirements for the single filing rule, he is unable to piggyback onto any of the EEOC charges of the Plaintiffs in this lawsuit.  Therefore, James has failed to exhaust his administrative remedies and summary judgment must be entered in favor of Defendant as to all of James's Title VII claims as a matter of law.

## III.    JAMES'S CLAIMS UNDER §1981 FAIL AS A MATTER OF LAW.

In the First Amended Complaint, James asserts identical claims of race discrimination and retaliation under §1981 as he does under Title VII.[31]  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts [] as is enjoyed by white citizens."  42 U.S.C .A. §1981(a).  To sustain a claim under §1981, the plaintiff must base his allegations on an underlying, enforceable employment contract.  *Byers v. Dallas Morning News, Inc.*, 209 F.3d

---

[30] Johnson, Exh. 12; Holmes, Exh. 9.
[31] First Amended Complaint, Doc. No. 6, ¶¶ 203-208, 210, 215, 216.

419, 425 (5th Cir. 2000) (finding that "at-will" employment qualifies as an employment contract for purposes of §1981 claim).

In the instant matter, the evidence, or rather *lack thereof*, demonstrates that there was never an employment contract, whether at-will or otherwise, between Defendant and James. Indeed, there is absolutely no evidence of any employment relationship between Defendant and James.[32]  *See* Section II.1, *supra*.  In fact, the evidence clearly shows that James was employed by Shaw Maintenance, not Defendant.  *See* Section II.1, *supra*.  Because no employment contract ever existed between Defendant and James, summary judgment should be entered in favor of Defendant as to all of James's claims arising under §1981.  *See Dunn v. Uniroyal Chem. Co.*, 192 F. Supp. 2d 557, 561 (M.D. La. 2001) (summary judgment granted as to §1981 claim where court found that no employment contract, written or otherwise, existed between an oil company and a temporary employee who was employed by a staffing company).

## IV.   JAMES' §1981 FAILURE TO PROMOTE CLAIMS ARE UNTIMELY.

Even if this Court were to conclude that James could proceed with his §1981 claims against Shaw Constructors, James's failure to promote claims should be dismissed nonetheless because they are time barred.[33]

§1981 does not contain a statute of limitations; therefore, courts traditionally apply the most analogous state statute of limitations.  *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 371, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004).  In 1990, however, Congress enacted 28 U.S.C. §1658, which created a default four-year statute of limitations for causes of action created after

---

[32] Roosa Dec. ¶20.
[33] Defendant moves for summary dismissal of James's failure to promote claims on the basis of timeliness only and does not address the substantive merits of the claim or any other §1981 claim as Defendant maintains that it is not James's employer and, therefore, not in a position to defend those claims.

December 1, 1990.  Therefore, if a plaintiff's cause of action arises under a federal law enacted after December 1, 1990, the four-year statute of limitations applies.

With respect to discrimination claims arising under §1981, the Supreme Court held that where a cause of action arising under §1981 was created as a result of the amendments contained in the Civil Rights Act of 1991, the new cause of action would be subject to the four-year limitations period.  *Jones*, 541 U.S. at 371, 383-85.  However, if the claim asserted by the plaintiff was one that was cognizable under §1981 before the amendments, the most analogous state limitations period applies.  *See id.*  Consequently, if a plaintiff's failure to promote claim was cognizable under §1981 *before* the Civil Rights Act of 1991, the four-year statute does not apply, and the state statute of limitations controls.  *See Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005).

Whether Louisiana's one-year prescriptive period applies to a plaintiff's claim for failure to promote under §1981 depends on whether the promotion "involved the opportunity to enter into a new contract with the employer, thus, creating a new and distinct relationship.  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 185, 109 S. Ct 2363 (1989).  "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position."  *Police Ass'n ex rel. Cannatella v. City of New Orleans,* 100 F.3d 1159, 1170-71 (5th Cir. 1996); *Harrison v. Associates Corp. of North America*, 917 F.2d 195, 198 (5th Cir. 1990).  However, "routine increases in salary and responsibility" that are merely "rung[s] on the career ladder" do not create a new and distinct employment relationship.  *Johnson v. Uncle Ben's*, 965 F.2d 1363, 1371 (5th Cir. 1992).

In this case, James sought various promotions during the period of time he worked as a laborer helper at the Goodyear plant in Beaumont, Texas.  More specifically, James sought to be promoted from a laborer helper to either (1) a boilermaker journeyman or (2) a safetyman.[34] Obviously, the move from a laborer helper to either a boilermaker journeyman or a safetyman would involve a different pay rate and entirely different set of technical skills.  Because these promotions would have a significant increase in the level of responsibility and the rate of pay, the promotion into a boilermaker or safetyman position would create a "meaningful, qualitative change in the contractual relationship."  *Crawford v. City of Houston,*  2006 U.S. Dist. LEXIS 97156, 18-19 (S.D. Tex. May 24, 2006).  Thus, Louisiana's one-year prescriptive period applies to James's failure to promote claims.  *See Smith v. Aaron's Inc.*, 325 F. Supp. 2d 716 (E.D. La. 2004) (applying Louisiana's one-year prescriptive period to a claim for failure to promote under §1981 where the position sought by plaintiff would "entail a raise in salary, an additional time commitment and increased responsibilities," and thus "would have formed a new and distinct relationship" with the employer.)

Applying Louisiana's one-year prescriptive period to the facts of this case mandates a dismissal of James's failure to promote claims.  James last worked for Shaw on October 31, 2011.  Thus, any promotion claims he had would have prescribed, at the latest, by October 31, 2012.  James, however, joined this lawsuit on March 29, 2013 – well beyond the statute of limitations for his failure to promote claims.[35]  Therefore, James's failure to promote claims brought pursuant to §1981 must be dismissed as a matter of law.

---

[34] James, pp. 56-63.
[35] Doc. No. 6.

## <u>CONCLUSION</u>

Based on the foregoing record evidence and controlling legal authority, the claims of Plaintiff Terence James should be dismissed as a matter of law.


Dated:  August 21, 2015
                                /s/ *Christine S. Keenan*
                                CHRISTINE S. KEENAN, TA (La. #23293)
                                JEREMY J. LANDRY (La. #30588)
                                THE KULLMAN FIRM, P.C.
                                4605 Bluebonnet Boulevard, Suite A
                                Baton Rouge, LA 70809
                                Telephone: (225) 906-4250
                                csk@kullmanlaw.com
                                jjl@kullmanlaw.com

                                JERRALD L. SHIVERS (La. 12030)
                                THE KULLMAN FIRM, P.C.
                                1640 Lelia Drive, Suite 120
                                Jackson, MS 39216
                                Telephone: (601) 366-2990
                                jls@kullmanlaw.com

                                MICHAEL S. HUDSON (Miss. #99412)
                                (*Pro Hac Vice*)
                                THE KULLMAN FIRM, P.C.
                                Suite 704, Court Square Towers
                                200 6th Street North
                                Post Office Box 827
                                Columbus, MS 39701
                                Telephone: (662) 244-8824
                                msh@kullmanlaw.com

                                **COUNSEL FOR DEFENDANT**
                                **SHAW CONSTRUCTORS, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 21st day of August, 2015, I electronically filed a copy of the foregoing document with the Clerk of Court by using the CM/ECF system.

/s/*Christine S. Keenan*
Counsel for Defendant