FRANCIS MOORE, DEREK
DAVIS, PHILLIP HENTZ,
CHARLES HOLMES,
TERRENCE JAMES, ROY          CIVIL ACTION NO.: 3:12-CV-757
JOHNSON, SHAWN KEITH,       (JWD)(RLB)
CARLOS NEAL, MARCUS
RICHARDSON, BYRON RICKS,
BEOWULF SNELL, and PANDRA    JUDGE deGRAVELLES
VAUGHN

      *Plaintiffs*,

                                MAGISTRATE JUDGE BOURGEOIS

v.

THE SHAW GROUP, INC.

      *Defendant*.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO SEVER

NOW INTO COURT, through undersigned counsel, comes Shaw Constructors, Inc. ("Defendant" or "Shaw"), incorrectly identified as The Shaw Group, Inc., and pursuant to Rules 20, 21, and 42 of the Federal Rules of Civil Procedure submits this Memorandum in Support of its Motion to Sever, stating as follows:

## I.   INTRODUCTION.

This lawsuit involves eleven former employees of Shaw who assert various claims of racial discrimination, racial harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. ("Title VII") and 42 U.S.C. §1981 ("§1981") arising out of their respective employment relationships with Shaw. The only common link between eleven of the Plaintiffs is that each was working at the same construction site located in Fulton, Arkansas. One of the Plaintiffs, Terrence James, never worked at the Fulton, Arkansas location and, in fact, never worked for Shaw Constructors at all.

Shaw now moves to sever the claims of the Plaintiffs on the basis that their respective claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Further, a trial of all of the Plaintiffs' claims in the same proceeding will be prejudicial to Shaw, contrary to the interest of justice and fundamental fairness, and will undoubtedly result in jury confusion.

## II.    FACTUAL BACKGROUND.

There are twelve plaintiffs in this action including: Frances Moore, Derek Davis, Phillip Hentz, Charles Holmes, Terrence James, Roy Johnson, Shawn Keith, Carlos Neal, Marcus Richardson, Byron Ricks, Beowulf Snell, and Pandra Vaughn.[1] All of these Plaintiffs, except for Terrence James, worked for Shaw at various points in time, at a power plant owned and operated by American Electric Power Company located in Fulton, Arkansas known as the John W. Turk, Jr. Power Plant ("the Turk site"). The Plaintiffs were employed at different times, in different positions and working under different supervisors. The relevant facts relating to each Plaintiff is discussed below.[2]

### A.    Frances Moore.

Frances Moore was hired by Shaw in October 2009 as a Millwright.[3] Moore reported to several foreman including David Bryant, Anthony Miller, and Trent Gordon.[4] The foremen, in turn, reported to Superintendent, Darrin Hillestad.[5] Moore alleges that she was subjected to various forms of racial harassment at the hands of her co-workers, specifically Estill Groves and

---

[1] Amended Complaint, Rec. Doc. No. 6.
[2] Defendant intends to file dispositive motions with respect to each plaintiff which will set forth in more detail the specific facts pertaining to each plaintiff.
[3] Deposition of Frances Moore, p. 52. Excerpts from the Deposition of Frances Moore are attached to Defendant's Motion to Sever as Exhibit 1 and cited herein as "Moore, p. ___."
[4] Moore, pp. 65-66.
[5] Moore, pp. 63-64.

Chris Paris.[6]  Moore also claims that she witnessed racially offensive graffiti at the worksite.[7]

Moore alleges that after she reported the alleged harassment, she was retaliated against both by

Bryant and Hillestad.  Moore resigned from her employment on August 5, 2011.[8]  Moore testified

that she does not know any of the other Plaintiffs; did not work with any of the other Plaintiffs nor

does she know anything about the claims of any of the other Plaintiffs.[9]  As she testified: "I – to be

honest, I don't even know the plaintiffs' in this case."[10]

**B.     Derek Davis.**

Davis was originally hired by Shaw on or about February 28, 2011 to work as a Pipefitter

Helper at a power plant located in St. Paul, Virginia, known as "Dominion."[11]  During the time

that Davis worked at Dominion, he reported to Robert Deaton.[12]  While working at Dominion,

Davis alleges that he was paid less than similarly-situated white employees.[13]  Davis also alleges

that he was subjected to disparate treatment on the basis of his race in that white Pipefitter Helpers

were given more favorable work assignments.[14]  Davis also alleges that Deaton subjected him to a

racially-charged hostile work environment.[15]  Davis was terminated from Dominion as part of a

reduction in force on June 28, 2011.[16]

On July 15, 2011, Davis was hired as a Pipefitter Helper at the Turk site.[17]  He reported to

Foreman Robin Drummond.[18]  Davis alleges that during his employment at Turk he was subjected

---

[6] Amended Complaint, ¶¶40, 42; Moore, Exh. 8.
[7] Amended Complaint, ¶¶45, 46.
[8] Moore, Exh. 14.
[9] Moore, pp. 257-259.
[10] Moore, p. 257.
[11] Deposition of Derek Davis, pp. 18-19, Exh. 2.  Excerpts from the Deposition of Derek Davis are attached to
Defendant's Motion to Sever as Exhibit 2 and cited herein as "Davis, p. ___."
[12] Davis, p. 34.
[13] Amended Complaint, ¶54.
[14] Davis, pp. 37-40, 42-44.
[15] Amended Complaint, ¶¶ 56-57; Davis, pp. 45-47.
[16] Davis, Exh. 5.
[17] Davis, Exh. 6.
[18] Davis, p. 73.

to a racially-charged hostile work environment.[19]   More specifically, Davis alleges that a co-worker named "Dean" referred to him as "boy."[20]   He also observed racially-derogatory graffiti in the portajohns.[21]   Additionally, on or about October 20, 2011, Davis, along with co-plaintiff Marcus Richardson, reported to Drummond that they had observed an object that appeared to be a noose near their work area.[22]   The following day, on October 21, 2011, Davis' employment was terminated due to a reduction-in-force.[23]   Davis alleges that he was terminated in retaliation for reporting the alleged noose.[24]   Derek Davis worked only with Plaintiff Marcus Richardson.  He admits that he did not work with the other Plaintiffs, does not know the other Plaintiffs, nor does he have information pertaining to the claims of the other Plaintiffs.[25]

### C.      Marcus Richardson.

Marcus Richardson was hired by Shaw as a Pipefitter Helper on July 22, 2011.[26]   He worked on the same crew as Derek Davis.  Therefore, like Davis, he reported to Foreman Robin Drummond.[27]   Richardson asserts a claim of disparate treatment based on race.  Specifically, Richardson alleges that he was given less desirable work assignments than white employees.[28]   Richardson also asserts a claim for discriminatory denial of a promotion in that he was denied the opportunity to take a position working in the warehouse.[29]   Richardson also asserts a claim of a racially-charged hostile work environment in that he observed racially-derogatory graffiti and

---

[19] Amended Complaint, ¶¶ 55, 61, 62.
[20] Amended Complaint, ¶61.
[21] Amended Complaint, ¶55.
[22] Amended Complaint, ¶62; Davis, pp. 96-97.
[23] Davis, Exh. 18.
[24] Amended Complaint, ¶63.
[25] Davis, pp. 165-166.
[26] Deposition of Marcus Richardson, Exh. 2.  Excerpts from the Deposition of Marcus Richardson are attached to Defendant's Motion to Sever as Exhibit 3 and cited herein as "Richardson, p. ___."
[27] Richardson, Exh. 7.
[28] Richardson, pp. 39-40.
[29] Richardson, pp. 70-71.

Confederate flags in the workplace.[30]  He also claims that he was subjected to racial slurs by unknown individuals.[31]  In addition, on October 20, 2011, Richardson, along with co-plaintiff Davis, reported to Drummond that they had observed an object that appeared to be a noose near their work area.[32]  The following day, on October 21, 2011, Richardson's employment was terminated as part of a reduction-in-force.[33]  Richardson alleges that he was terminated in retaliation for reporting the alleged noose.  After leaving the Turk site, Richardson testified that he continued to apply for jobs with Shaw but none were offered to him.[34]  Richardson believes he has not been re-hired by Shaw because of his complaints of discrimination and harassment.[35]  Marcus Richardson worked only with Plaintiff Derek Davis.  He admits that he did not work with the other Plaintiffs, does not know the other Plaintiffs, nor does he have information pertaining to the claims of the other Plaintiffs.[36]

### D.  Phillip Hentz.

Phillip Hentz was hired by Shaw as an Industrial Welder on March 2, 2012.[37]  He reported to Foreman Jamie Sanchez who, in turn, reported to General Foreman Michael Adcock.  In this lawsuit, Hentz alleges that he was treated less favorably by his foreman, Jamie Sanchez, than similarly-situated white males.  More specifically, Hentz complains that he was required to do electrical work rather than welding work and that he was often assigned more difficult tasks than white workers.[38]  Hentz also alleges that he was subjected to racial slurs made by Steven Flores

---

[30] Amended Complaint, ¶¶149-150.
[31] Richardson, pp. 40-41.
[32] Richardson, pp. 51-52.
[33] Richardson, Exh. 7.
[34] Amended Complaint, ¶154.
[35] Id.
[36] Richardson, pp. 100-101.
[37] Deposition of Phillip Hentz, Exh. 2.  Excerpts from the Deposition of Phillip Hentz are attached to Defendant's Motion to Sever as Exhibit 4 and cited herein as "Hentz, p. ___."
[38] Amended Complaint, ¶71.

and Jace Ford.[39]  Hentz also alleges that he observed a co-worker, Kevin Bush, make a noose.[40]  On or about September 15, 2012, Hentz was involved in a confrontation with Adcock and suspended for several days with pay.[41]  On or about September 20, 2012, Hentz was terminated as part of a reduction-in-force.[42]  Hentz worked only with Plaintiff Charles Holmes.[43]

### E.  Charles Holmes.

Charles Holmes was hired on February 20, 2012 as an Industrial Electrician.[44]  He was initially assigned to work the night shift.  In August 2012, Holmes was transferred to the day shift where he reported to Foreman Jamie Sanchez.[45]  Holmes alleges that he was subjected to a racially-charged hostile work environment by Greg Polk, Cgaime Delatorie, Steven Flores, Jamie Sanchez, Michael Adcock, and John Hancock.[46]  He also alleges that he witnessed two nooses[47] and observed racial graffiti.  Holmes was allowed to resign in lieu of termination on September 13, 2012 after a piece of missing electrical equipment was discovered in his lunch box.[48]  Holmes worked only with Plaintiff Philip Hentz.  He does he have any information relating to the claims of the other Plaintiffs.[49]

### F.  Roy Johnson.

Roy Johnson was hired by Shaw as a Heat Stress Technician.[50]  Johnson reported to Foreman Mario Bingham, who, in turn, reported to General Foreman Jack Lowe.[51]  Lowe was

---

[39] Amended Complaint, ¶¶73-74.
[40] Amended Complaint, ¶77.
[41] Hentz, pp. 47-52.
[42] Hentz, Exh. 8.
[43] Hentz, p. 103-108
[44] Deposition of Charles Holmes, p. 27, Exh. 2.  Excerpts from the Deposition of Charles Holmes are attached to Defendant's Motion to Sever as Exhibit 5 and cited herein as "Holmes, p. ___."
[45] Holmes, p. 42.
[46] Amended Complaint, ¶85-86; Holmes, pp. 28-33.
[47] Amended Complaint, ¶90.
[48] Holmes, Exh. 7.
[49] Holmes, pp. 119-121.
[50] Deposition of Roy Johnson, Exh. 4.  Excerpts from the Deposition of Roy Johnson are attached to Defendant's Motion to Sever as Exhibit 6 and cited herein as "Johnson, p. ___."

replaced by Theodore Schmell.[52]   Johnson claims he was denied a promotion into the Superintendent position based on race.[53] Johnson also contends that he received disciplinary actions by Schmell because of his race.[54] Johnson also claims that he was subjected to a racially-charged hostile work environment, which included being subjected to racial slurs in the workplace by unidentified individuals[55] and observing racially-derogatory graffiti in the portajohns.[56] Johnson also claims that he observed a noose in his work area in October 2001.  On December 9, 2011, Johnson was terminated from the Turk site as part of a reduction-in-force.[57]   Johnson believes he was selected for the reduction-in-force because of his race and because he reported the incident with the noose.[58]   Johnson did not work with any of the other Plaintiffs.  Further, Johnson testified that he did not know any of the other Plaintiffs nor did he know anything about their claims.[59]

### G.    Shawn Keith.

Shawn Keith was hired by Shaw on two different occasions.  Keith was initially hired as a Concrete Helper in July 2009.[60]  He reported to Foreman Dealous Smith.[61]  Keith resigned on June 25, 2010.[62]   On or about December 14, 2010, Keith was re-hired as a Pipefitter Helper.[63]   He initially reported to Foreman Matthew Brown and later to Foreman Brian Penka.[64]  Keith alleges that he was subjected to a racially-charged hostile work environment.  More specifically, Keith

---

[51] Johnson, pp. 42, 47-48
[52] Johnson, p. 56.
[53] Johnson, pp. 51-58.
[54] Johnson, pp. 60-61.
[55] Johnson, pp. 64, 67-68.
[56] Amended Complaint, ¶108; Johnson, p. 66.
[57] Johnson, Ex. 10.
[58] Johnson, p. 98.
[59] Johnson, pp. 125-127.
[60] Deposition of Shawn Keith, Exh. 7.  Excerpts from the Deposition of Shawn Keith are attached to Defendant's Motion to Sever as Exhibit 7 and cited herein as "Keith, p. ___."
[61] Keith, pp. 37-38.
[62] Keith, p. 37, Exh. 7.
[63] Keith, pp. 68, 76.
[64] Keith, p. 73, Exh. 9.

alleges that he observed nooses in the work area[65] and that he observed racially-derogatory graffiti in the portajohns.[66] Keith alleges that while working for Dealous Smith, he overheard Smith make a racially-derogatory remark to another black co-worker.[67] Keith also alleges that he was denied a promotion to the position of Pipefitter Helper 4 because of his race.[68] On October 18, 2011, Keith resigned his employment at the Turk site.[69] Keith worked with Pandra Vaughn and briefly with Carlos Neal.[70] He did not work with any of the other Plaintiffs. Keith testified that he heard about Frances Smith but did not have any information pertaining to her claims or the claims of any of the other Plaintiffs in this action.[71]

### H.    Carlos Neal.

Carlos Neal worked for Shaw on two different occasions. Neal was first hired on or about April 6, 2011 as a Pipefitter. He reported to Foreman Brian Penka.[72] Plaintiffs Shawn Keith and Pandra Vaughn worked on Neal's crew for several weeks.[73] In approximately June 2011, Neal was transferred to a different crew reporting to Foreman Michael Sears.[74] Neal stayed on that crew until he resigned on October 10, 2011.[75] In December 2011, Neal was re-hired as a Pipefitter reporting to Foreman Eric Bethany.[76] Neal remained on Bethany's crew until February 2012.[77]

---

[65] Amended Complaint, ¶¶120-121.
[66] Amended Complaint, ¶124.
[67] Amended Complaint, ¶¶117-119.
[68] Amended Complaint, ¶¶126-128.
[69] Amended Complaint, ¶130; Keith, Exh. 22.
[70] Keith, pp. 74, 75, 168.
[71] Keith, pp. 94-95, 167-169.
[72] Deposition of Carlos Neal, pp. 17-18, 23; Exh. 2. Excerpts from the Deposition of Carlos Neal are attached to Defendant's Motion to Sever as Exhibit 8 and cited herein as "Neal, p. ___."
[73] Neal, p. 24.
[74] Neal, pp. 25-27.
[75] Neal, p. 17, 27.
[76] Neal, p. 27.
[77] Neal, p. 28.

Neal alleges that he was subjected to a racially-charged hostile work environment in that he observed nooses at various times throughout his employment.[78] Neal also alleges that he was subjected to racial slurs by Penka, Sears, and Shawn McWhorter, as well as racially-derogatory graffiti in the portajohns.[79] Neal also alleges that he was disciplined more severely than similarly-situated white co-workers by Superintendent Billy Youngblood and General Foreman Matthew Brown.[80] Neal also complains that in June 2011 he was denied a promotion into a foreman position based on his race.[81] Neal resigned on October 8, 2011.[82] Neal worked briefly with Plaintiff Shawn Keith and Pandra Vaughn. He claims that he knows Frances Moore and Phillip Hentz. However, Neal admits that he knows nothing about their claims and they do not know anything about his claims in this case.[83]

### I. Byron Ricks.

Byron Ricks was hired by Shaw on April 4, 2011 as an Electrician.[84] At the time he was hired, Ricks reported to Foreman David Martinez who, in turn, reported to General Foreman Jason Westfall and Superintendent Robert Gibbs.[85] In August 2011, Ricks was promoted to the foreman position.[86] He continued to report to Westfall as General Foreman and Gibbs as Superintendent. At some point, Greg Polk became the Superintendent. Ricks remained in the foreman position until he was terminated as part of a reduction-in-force on June 8, 2012.[87]

Ricks alleges that he was subjected to a racially-derogatory hostile work environment in that he observed and reported racially-derogatory graffiti in the portajohns and confederate flags

---

[78] Amended Complaint, ¶133.
[79] Amended Complaint, ¶¶136, 137.
[80] Amended Complaint, ¶¶141-142; Neal, pp. 31-32.
[81] Amended Complaint, ¶143.
[82] Neal, p. 47.
[83] Neal, pp. 100-101.
[84] Deposition of Byron Ricks, p. 30, Exh. 1. Excerpts from the Deposition of Byron Ricks are attached to Defendant's Motion to Sever as Exhibit 9 and cited herein as "Ricks, p. ___."
[85] Ricks, p. 44.
[86] Ricks, p. 51, Exh. 6.
[87] Ricks, pp. 67, 160-161.

on tool boxes. Ricks also alleges that he was subjected to racial jokes from unnamed white employees.[88] Ricks also alleges that during the period of October through December 2001, he observed several nooses in the workplace.[89] Ricks also alleges that he was disciplined by Jason Westfall and Greg Polk more harshly than other white foreman.[90] He further alleges that Westfall would not allow him to have the same authority over his crew as other white foreman.[91] Ricks filed a Charge of Discrimination with the EEOC on February 17, 2012. Subsequently, on June 8, 2012, Ricks was terminated as part of a reduction in force. Ricks believes he was selected for the layoff in retaliation for filing the EEOC Charge.[92] Ricks testified that he was aware of the circumstances surrounding Plaintiff Beowulf Snell's termination[93] and that he observed the same noose as Roy Johnson.[94] Ricks has no information relating to the claims of the other Plaintiffs.[95]

**J.      Beowulf Snell.**

Beowulf Snell was hired by Shaw on July 27, 2011 as an Electrician.[96] He reported to Foreman Marty Pantenoble who, in turn, reported to General Foreman Jason Westfall.[97] Snell alleges that he was passed over for two openings in the foreman position in September 2011.[98] Snell also alleges that he observed racially-derogatory graffiti in the portajohns[99] and that he saw at least two nooses.[100] Snell also alleges that he heard unnamed individuals use racial slurs in the

---

[88] Amended Complaint, ¶160.
[89] Amended Complaint, ¶162.
[90] Amended Complaint, ¶158.
[91] Amended Complaint, ¶164.
[92] Amended Complaint, ¶170.
[93] Ricks, pp. 216-217.
[94] Ricks, pp. 202-203.
[95] Ricks, pp. 199-203.
[96] Deposition of Beowulf Snell, pp. 19-20, Exh. 2. Excerpts from the Deposition of Beowulf Snell are attached to Defendant's Motion to Sever as Exhibit 10 and cited herein as "Snell, p. ___."
[97] Snell, p. 28, 30.
[98] Amended Complaint,¶ ¶174-175; Snell, pp. 31.
[99] Amended Complaint, ¶173; Snell, p. 33-34.
[100] Snell, pp. 38-40.

workplace.[101]  He also recalled an incident that occurred on October 23, 2011 where a co-worker, Charles Trower, used the "n-word."  Snell reported the incident to Human Resources and Trower was terminated.[102]  Shortly after he reported Trower, Snell was transferred to a different crew reporting to Foreman Chad Sudberry.[103]  While working on Sudberry's crew, Snell was observed working without his safety harness properly attached, which is a terminable offense.[104]  Consequently, Snell was terminated on October 27, 2011, due to failure to follow Shaw's mandatory safety rules.[105]  Snell believes he was terminated in retaliation for reporting Charles Trower.[106]  Snell filed a Charge of Discrimination with the EEOC on March 20, 2012.  Snell alleges that he has re-applied for work with Shaw but has not been re-hired.  Snell believes he has not been re-hired because he filed an EEOC Charge.  Snell knows Plaintiff Byron Ricks but admitted that he knows nothing about his claims.  Snell further admitted that he knows nothing about the claims of the other plaintiffs.

K.     **Pandra Vaughn.**

Pandra Vaughn was hired by Shaw on May 9, 2011 as a Pipefitter reporting to Foreman Brian Penka.[107]  The General Foreman was Benjamin Pete.[108]  Shawn Keith worked on Vaughn's crew.  Vaughn alleges that he and Shawn Keith were given more difficult work assignments than their white co-workers.[109]  Vaughn also contends that similarly-situated white employees were advanced in pay more rapidly while he was intentionally delayed by both Penka and Pete.[110]  Vaughn also asserts a claim of a racially-charged hostile work environment in that he observed

---

[101] Amended Complaint, ¶172.
[102] Snell, pp. 40-41.
[103] Snell, pp. 28-29.
[104] Snell, pp. 43-46.
[105] Snell, p. 53; Exh. 10.
[106] Snell, pp. 44-45.
[107] Deposition of Pandra Vaughn, p. 35; Exh. 1.  Excerpts from the Deposition of Pandra Vaughn are attached to Defendant's Motion to Sever as Exhibit 11 and cited herein as "Vaughn, p. ___."
[108] Vaughn, p. 44.
[109] Amended Complaint, ¶187; Vaughn, pp. 50-53.
[110] Amended Complaint, ¶¶188-189; Vaughn, pp. 47-48.

racially-derogatory graffiti in the porta johns.[111]  Vaughn also asserts a claim of discriminatory termination.  On September 8, 2011, Vaughn was terminated for violating Shaw's policy which prohibits the use of cell phones inside the plant.[112]  Vaughn contends that similarly-situated white workers were not terminated for committing this same work-rule violation.[113]  Vaughn filed a Charge of Discrimination with the EEOC on December 27, 2011.[114]  Vaughn alleges that he has applied for work with Shaw since his termination but has not been re-hired.  Vaughn believes he has not been re-hired in retaliation for filing an EEOC Charge.[115]  While Vaughn worked with Shawn Keith, he does not have any first-hand knowledge regarding the claims of the other plaintiffs in this case.[116]

### L.    Terrance James.

Terrance James was not employed at the Turk site nor was he ever an employee of Shaw Constructors, Inc., the named defendant in this action.  James was employed by Shaw Maintenance, Inc. at the Goodyear plant located in Beaumont, Texas from June 7, 2011 through the date of his resignation on October 31, 2011.[117]  During the time that James worked at Goodyear, James reported to Foreman Elton Kennerson and Superintendent C.P. Abshire.[118]  James does not know any of the Plaintiffs nor does he have any information about any of the claims of the Plaintiffs in this action.[119]

---

[111] Amended Complaint, ¶185.
[112] Amended Complaint, ¶190; Vaughn, pp. 66-69, Exh. 8.
[113] Amended Complaint, ¶190; Vaughn, p. 72.
[114] Amended Complaint, ¶191.
[115] Amended Complaint, ¶192.
[116] Vaughn, pp. 116-117.
[117] Deposition of Terrance James, pp. 17, 32-33; Exhs. 5-6.  Excerpts from the Deposition of Terrance James are attached to Defendant's Motion to Sever as Exhibit 12 and cited herein as "James, p. ___."
[118] James, p. 54; Exh. 5.
[119] James, pp. 102-103.

## III.    LEGAL STANDARD.

Under Rules 20 and 21 of the Federal Rules of Civil Procedure, the district court has the discretion to sever an action if it is misjoined.  Applewhite v. Reichhold Chemicals, Inc., 67 F.3d 571, 574 (5th Cir. 1995).  Whether an action has been properly joined is governed by Rule 20 of the Federal Rules of Civil Procedure -

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. ...

Claims are misjoined "when the claims asserted do not arise out of the same transaction or occurrence or do not present some common question of law or fact." American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc., 407 F. Supp. 164, 190 (D.V.I. 1975).   Rule 21 of the Federal Rules of Civil Procedure governs misjoinder and expressly provides that the remedy for misjoinder is severance. Fed. R. Civ. P. 21.

Where, as here, the court is analyzing the proper joinder of discrimination claims, courts should consider various factors, including: (1) the time period during which the alleged acts occurred, (2) whether the acts of discrimination are related, (3) whether there were differing types of adverse employment actions, (4) whether more than one type of discrimination is alleged, (5) whether the same supervisors were involved, (6) whether employees worked in the same department, (7) whether employees were at different geographical locations, and (8) whether a company-wide policy is alleged.  Berry v. Illinois Dep't of Human Servs., 2001 WL 111035, at *17 (N.D. Ill. 2001).

Notably, in analyzing the proper joinder of discrimination claims in the class action context, the United States Supreme Court in Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011), has recognized the difficulty of establishing commonality among plaintiffs.  In Dukes, the

Supreme Court held that the plaintiffs in a Title VII sex discrimination lawsuit asserting claims of unequal pay, failure to promote, disparate discipline, and harassment could not proceed collectively as a Rule 23 class action. In so holding, the Court stated, "the mere claim by employees of the same company that they have suffered a Title VII injury … gives no cause to believe that all their claims can productively be litigated at once." 131 S.Ct. at 2551-2552. The Supreme Court recognized that the proper joinder of claims in the discrimination context requires "some glue" to connect each "particular employment decision." Id. In this case, there is no such glue. Thus, an application of the foregoing factors to the evidence of record in this case, mandates severance of the Plaintiffs' claims.

## IV.  ARGUMENT.

### A.  The Circumstances Surrounding Each Plaintiff's Adverse Employment Action Is Unique.

Each Plaintiff alleges that he or she was discriminated against on the basis of race. However, the circumstances surrounding each Plaintiff's alleged adverse employment action(s) are different. While all of the Plaintiffs allege some form of hostile work environment, each of them allege facts unique to their working environment and the crews and areas to which they were assigned. Other than the common allegation of graffiti in the portajohns, the Plaintiffs each describe a unique set of events that form the basis of their respective hostile work environment claims.

Likewise, some but not all of the Plaintiffs assert claims of discriminatory failure to promote. In order to prevail on a failure to promote claim, the Plaintiff must show that he was qualified for an available promotion that he was denied.[120] Thus, a determination of whether any of the Plaintiffs met the requirements for a promotion will involve a detailed review of facts that

---

[120] LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir.1996).

are specific to each Plaintiff. The Plaintiffs are not contending that each was passed over for the same position at the same time. Rather, the alleged discrimination against each Plaintiff involved different positions and occurred at separate times. Thus, an entirely different and unique set of circumstances would apply to each Plaintiff in determining whether a discriminatory promotion claim exists.

Additionally, some of the Plaintiffs assert claims of discriminatory compensation. In order to prevail on such a claim, the plaintiff must show that he received less pay than a similarly-situated white employee.[121] Since each Plaintiff has unique attributes and qualifications, it will be necessary to review detailed evidence of the particular qualifications, employment history, and performance history of each Plaintiff and the particular Plaintiff's alleged comparators in order to determine whether he was, in fact, receiving less pay than a "similarly-situated" white male.

In sum, it is clear that the factual bases for each of the Plaintiffs' claims will be individualized.

**B.      The Plaintiffs Worked At Various Times, In Various Positions and Their Claims Involve Different Shaw Employees.**

Although Plaintiffs may contend that their claims are logically related, there are considerable differences surrounding each Plaintiff's employment relationship with Shaw, particularly: (1) the specific position held by each Plaintiff; (2) the dates on which the allegedly wrongful actions occurred; and (3) the allegedly discriminatory actors.

The record evidence establishes that the Plaintiffs held various positions with Shaw at various times. Frances Moore was a Millwright who did not work with any of the other Plaintiffs. Shawn Keith was both a Concrete Helper and a Pipefitter Helper who worked only briefly with Carlos Neal and Pandra Vaughn. Carlos Neal and Pandra Vaughn were both Pipefitters who

---

[121] <u>Williams v. Galveston Independent School Dist</u>., 256 F.Supp.2d 668 (S.D.Tex.,2003), <u>citing</u>, <u>Uviedo v. Steves Sash & Door Co</u>., 738 F.2d 1425, 1431 (5th Cir.1984).

worked on different crews at different times with only a brief period of overlap on the same crew with Shawn Keith. Byron Ricks was an Electrical Foreman who knew Beowulf Snell but never worked with him. Beowulf Snell and Charles Holmes were both Electricians, however, they worked on completely different crews at completely different times. Roy Johnson was a Heat Stress Technician who did not work with any of the other Plaintiffs. Phillip Hentz was a Welder who worked with Charles Holmes but did not work with any of the other Plaintiffs. And, Terrance James was a Laborer *who did not even work at the Turk site*. Only Marcus Richardson and Derek Davis were employed in the same position, Pipefitter Helper, and assigned to the same crew and at the same time. The other Plaintiffs have no such logical connection.

In addition to the dissimilarities in time and job position, each Plaintiff's claim involves alleged wrongdoing by different employees of Shaw. Moore alleges that she suffered harassment and retaliation at the hands of Estill Groves, Chris Paris, David Bryant, Darin Hillestad, and Trent Gordon. Derek Davis asserts harassment at the Dominion site by Robert Deaton. Phillip Hentz and Charles Holmes allege that they were discriminated against and harassed by Steven Flores, Jace Ford, Kevin Bush, Jamie Sanchez, and Michael Adcock. Roy Johnson alleges that he was discriminated against by Teddy Schmell. Shawn Keith alleges that he was subjected to a racially-charged hostile work environment at the hands of Dealous Smith. Carlos Neal alleges that he was subjected to racial slurs by Shawn McWhorter, Mike Sears, and Brian Penka and that he was disciplined more harshly by Billy Youngblood and Matthew Brown. Byron Ricks alleges that he was treated unfairly by his General Foreman Jason Westfall, Superintendent Robert Gibbs and Greg Polk. Beowulf Snell alleges that he was subjected to racial slurs by Charles Trower and that he was wrongfully terminated by Chad Sudberry. Thus, each claim involves a different Shaw employee.

In a case similar to the case at hand, <u>Willis v. Cleco Corp.</u>, 2011 WL 4443613, at *1 (W.D. La. Sept. 22, 2011), which involved 13 plaintiffs, the Western District of Louisiana, granted the employer's motion to sever where, as here, "[e]ven though all of the Plaintiffs allege discrimination on the basis of race, retaliation, or hostile work environment, . . . the specific circumstances of each Plaintiff's complained of employment actions are . . . different [because] . . . they were employed in different departments, in different positions, with varying degrees of responsibility, and under the supervision of different supervisors." <u>Willis</u>, 2011 WL 4443613, at *1. While the <u>Willis</u> plaintiffs argued that "a small core of key actors inside Defendant's corporate headquarters are responsible for discriminatory acts that impacted all of the plaintiffs" and that "these and other key witnesses will be required to testify for several of the plaintiffs, which would make separate trials costly," the court ruled that "[g]iven the significant factual differences among the Plaintiffs' claims, the jury should not be forced to engage in the hopeless task of trying to keep separate the evidence regarding each Plaintiff's claims." <u>Id</u>. at *2. <u>See also</u> <u>Weber v. Lockheed Martin Corp.</u>, 2001 WL 274518 (E.D. La. 2001)(granting motion to sever where there was no allegation that the alleged discriminatory actions were carried out by common actors, at a common time or with any common tactics).

In the instant case, Plaintiffs assert over forty unique claims arising under two federal statutes. Each claim involves a unique fact inquiry for each Plaintiff. Although Plaintiffs allege that Shaw engaged in a practice of unlawful discrimination, each act of wrong doing was alleged to have been carried out separately, at different times, by different people, and under completely unrelated circumstances. The lack of similar factual backgrounds of each Plaintiff's claims demonstrates that their claims do not arise out of the same transaction or occurrence or series of transactions and occurrences, and do not involve a common issue of fact. Thus, these Plaintiffs are misjoined and should be severed. <u>See</u> <u>Acevedo v. Allsup's Convenience Stores, Inc</u>., 600 F.3d

516, 521, 522 (5th Cir.2010) (holding that even where plaintiffs allege that an employer's company-wide practices satisfy the same transaction and occurrence test, denying joinder would not be an abuse of discretion where different witnesses and documentary proof would be required for plaintiffs' claims); Goodyear v. Dauterive Hosp., 2007 WL 2066855 (W.D. La. July 13, 2007)(granting motion to sever where each plaintiff's claim had separate and distinct factual basis and required individualized proof with different witnesses and different evidence); Thompson v. Sanderson Farms, Inc., 2006 WL 2559852 (S.D. Miss. Sept. 1, 2006)(same).

> **C.** **Allowing Plaintiffs To Continue In The Same Proceeding Will Result In Jury Confusion And Prejudice To Defendants.**

Even assuming this Court could find a logical connection between the Plaintiffs' various claims, the Plaintiffs' claims should be severed nonetheless because jury confusion will occur if the Plaintiffs are allowed to pursue their claims together in the same proceeding. Notably, Fed.R.Civ.P. 42(b) provides, in part:

> The court, in furtherance of convenience *or to avoid prejudice* ... may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

Fed. R. Civ. P. 42(b)(emphasis added).

In this case, Plaintiffs assert over forty claims collectively and none of the asserted claims is mutual to every Plaintiff. Moreover, the particular set of circumstances from which each Plaintiffs' claims arise is separate and distinct which will necessarily require presentation of facts and evidence that is unique to each Plaintiff.

For these reasons, courts have recognized that severance may be necessary to avoid confusing the jury and to prevent prejudice to an employer. Indeed, in Henderson v. AT&T Corp., 918 F. Supp. 1059 (S.D. Tex. 1996), the Southern District of Texas granted an employer's motion to sever in a case brought by five plaintiffs against their former employer asserting claims of sex

discrimination. While the Court assumed the claims were properly joined, the court granted the motion to sever nonetheless, stating that a single trial of the plaintiffs' claims would involve a large number of witnesses testifying about the defendant's conduct. Id. It reasoned that severance was required to avoid the danger that the jury would find the employer liable based on the sheer number of witnesses testifying about its alleged wrongdoing. Id. at 1064. In addition, the court concluded that the defendant would be substantially prejudiced by a single trial involving all of the plaintiffs' claims, citing the following factors: (1) in a single trial, the jury would hear evidence that may be relevant to the claims of one plaintiff, but was completely irrelevant and prejudicial to the claims of the remaining plaintiffs; (2) the jury may choose to resolve any confusion by considering all the testimony to pertain to all the claims, despite any limiting instructions; and (3) a single trial would unnecessarily complicate evidentiary rulings. Thus, the court held that severance was proper even though the plaintiffs may have been properly joined. Id.

The posture of this case is not only similar to Henderson, but even more compelling than the circumstances that led the court to sever the plaintiffs' claims in that matter. First, unlike the plaintiffs in Henderson, Plaintiffs herein identify no specific discriminatory policy or practice to which they all were subjected or any common transaction that gives rise to their respective claims. Rather, the Plaintiffs have improperly accumulated multiple, unrelated claims in one action. Much like Henderson, a parade of Plaintiffs across the witness stand in a case involving each individual's claims of discrimination would engender confusion and prejudice, and would unnecessarily complicate the issues in the case. Furthermore, considering the fact that there are *twelve* Plaintiffs asserting over forty different claims against Shaw, the amount of potential witnesses will be extremely large. Indeed, Plaintiffs' have identified ***at least eighty witnesses*** in their Initial Disclosures. The jury may improperly conclude that Shaw is liable based on the sheer number of witnesses involved. If tried together in a single action, the jury would be forced to

engage in the "hopeless task" of keeping separate each Plaintiff's individual claims. <u>Bailey v. Northern Trust Co.</u>, 196 F.R.D. 513 (N. D. Ill. 2002) (citation omitted).

On the other hand, if the claims are severed, the presentation of evidence will be orderly and specific to that individual's claims. Evidence admitted at trial will only have to be considered for a single individual's claims rather than for some claims but not others. Thus, severance is appropriate in this case to avoid the confusion and prejudice that will result from a single trial of twelve Plaintiffs asserting over forty claims.

**IV.**     <u>**CONCLUSION**</u>

As demonstrated above, the alleged claims of the twelve Plaintiffs do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Further, allowing the Plaintiffs to pursue their claims together in the same proceeding will lead to jury confusion and cause prejudice to Defendants. Therefore, pursuant to Federal Rules of Civil Procedure 20, 21, and 42, the claims of each Plaintiff should be severed, and each Plaintiff should be required to proceed with his or her claim(s) separately against any defendant(s) for whom that Plaintiff has alleged a cause of action.

**WHEREFORE, PREMISES CONSIDERED,** Defendant Shaw Constructors, Inc. respectfully requests that the Court grant its Motion to Sever as prayed for herein.

Respectfully submitted this the 21st day of August, 2015.

/s/ *Christine S. Keenan*
CHRISTINE S. KEENAN, TA (La. #23293)
JEREMY J. LANDRY
THE KULLMAN FIRM, P.C.
4605 Bluebonnet Boulevard, Suite A
Baton Rouge, LA 70809
Telephone: (225) 906-4250
csg@kullmanlaw.com
jjl@kullmanlaw.com

JERRALD L. SHIVERS
THE KULLMAN FIRM, P.C.
1640 Lelia Drive, Suite 120
Jackson, MS 39216
Telephone: (601) 366-2990
jls@kullmanlaw.com

MICHAEL S. HUDSON (Miss. #99412)
(*Pro Hac Vice*)
THE KULLMAN FIRM, P.C.
Suite 704, Court Square Towers
200 6th Street North
Post Office Box 827
Columbus, MS 39701
Telephone: (662) 244-8824
msh@kullmanlaw.com

**COUNSEL FOR DEFENDANT**
**SHAW CONSTRUCTORS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of August, 2015, I electronically filed a copy of the foregoing document with the Clerk of Court by using the CM/ECF system.

/s/*Christine S. Keenan*_____
Counsel for Defendant